IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

2026 JAN 16 | P 3: 11

TREY GRANGER, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

**GREGORY KELLY AND**
**ANNETTE B. KELLY**
6213 Willow Glen Dr
Montgomery ,AL 36117
**Plaintiffs,**

2:26-cv-37-RAH-KFP

**vs**                                                                     **CASE NO.:**

**ALABAMA DEPARTMENT OF VETERAN AFFAIRS (ADVA)**
100 North Union Street, Suite 850,
Montgomery, AL 36104
**JEFFREY NEWTON**
100 North Union Street, Suite 850,
Montgomery, AL 36104
**KENT DAVIS**
100 North Union Street, Suite 850,
Montgomery, AL 36104
**STATE MILITARY DEPARTMENT( ALABAMA  NATIONAL  GUARD)**
1720 Congressman William L. Dickinson Drive
P.O. Box 3711
Montgomery, Alabama 36109
**DAVID K. PRITCHETT**
1720 Congressman William L. Dickinson Drive
P.O. Box 3711
Montgomery, Alabama 36109
**SHERYLE E. GORDON**
1720 Congressman William L. Dickinson Drive
P.O. Box 3711
Montgomery, Alabama 36109

1

**ALABAMA  STATE PERSONNEL BOARD  (ASPB)**
64 North Union Street, 300 Folsom Administrative Building
Montgomery, AL 36130-4100
**ALABAMA  STATE PERSONNEL DEPARTMENT (ASPD)**
64 North Union Street, 300 Folsom Administrative Building
Montgomery, AL 36130-4100
**LAURY B. MORGAN ,**
64 North Union Street, 300 Folsom Administrative Building
Montgomery, AL 36130-4100
**STATE OF ALABAMA GOV. OFFICE( AL Gov Office)**
600 Dexter Ave
Montgomery, AL 36134
**KAY IVEY**
600 Dexter Ave
Montgomery, AL 36134
**Defendants,**

## PLAINTIFFS' ORIGINAL COMPLAINT

**COME NOW**, the Plaintiffs, Gregory and Annette B. Kelly allege the

following:


## I.    INTRODUCTION

1. The complaint charges that the Plaintiffs firings were "intended to punish

   perceived political enemies  of University of Alabama Machine (secret society

   members) and their business associates, as well as to eliminate from the state,

   county and city government workforce people of color, women, non-binary

   employees, and those, like Plaintiffs, who advocated for or were perceived as

   advocating for protected racial or gender groups."

2

2. Diversity, equity, inclusion, and accessibility ("DEIA" or "DEI") are terms used to describe efforts taken to advance the mandates of the civil rights laws and to ensure fairness.

3. Bad mouthing and labeling them as unfit and incompetent "DEI" workers, the University of Alabama Machine ( secret society members) and President Donald Trump Administration dismissed and derogated the skills, performance, and commitment Plaintiffs brought to their work as state employees.

4. President Trump and "University of A Machine Members" made clear their disdain for "DEI," federal and state government employees.

5. During his campaign, President Trump pledged to "eliminate all 'Diversity, Equity, and Inclusion' programs across the entire federal government,"3 thereby eradicating the "ideology" he imputed to President Biden's "Marxist executive order[s]" and "Marxist concept of 'equity.'"

6. Immediately upon taking office, President Trump made good on his threats.

7. On January 20, 2025, he signed EO 14151, directing the Director of the Office of Management and Budget ("OMB"), the Attorney General, and the Director of the Office of Personnel Management ("OPM") to engage in sweeping--top-down efforts to eliminate all DEIA-related offices, programs, and positions from all federal agencies within sixty days. The next day, President Trump signed EO 14173, again attacking DEIA without defining it.

3

8. **Since 2009,** the Defendants and "U of A Machine Members & Gang Members" have discriminated against Plaintiff, Gregory Kelly and his family members because Plaintiff, Gregory Kelly, was:

   **i.**  In Communication with state lawmakers about fraud, waste, and abuse at the Defendants' CAVHCS (**Ex #1**)

   ii.  Filing complaints about organized criminal activities occurring in Montgomery, AL including at the Defendants' CAVHCS (**Ex #2**)

  iii.  Filing complaints about PPPs, MSPs, HA and USERRA violations under the CSRA Act. (**Ex #3**)

  iv.  Filing complaints about SDWA Act, CWA Act and CCA Act violations under the federal environmental and safety laws. (**Ex #4**)

   v.  Filing complaints about the Defendants and Defendants' contractors DBA Act fair wage act violation and Anti-trust violations. (**Ex #5**)

  vi.  Filing complaints about the Defendants and Defendants' contractors making false promises about complying with Brook Act A&E Professional Services laws, and Copeland Anti- Kickback statutes, and the federal environmental laws and political lobbying activities with federal funds and Civil Rights obligations under the EEO Act, and FEMA Stafford Act disaster assistance civil right laws. (**Ex #6**)

vii.    Filing complaints about Title IX violations when Defendants and

Defendants' contractors colluded in denying women and transgender

students and same sex married couples "**FULL AND EQUAL**" access

to the WIOA, the ROTC , National Disaster Medical System (NDMS),

U.S. Department of Health and Human Services (HHS) and the

Established Program to Stimulate Competitive Research (EPSCoR) and

the  GI-Bill federally funded education and training programs.  **(Ex #7)**

viii.    Filing complaints about the Defendants' contractors Title XIII violations

when Defendants and Defendants' housing contractors, denying

transgender students and same sex married couples access to student

housing based on Defendants contractors' religious beliefs at the Troy

University Newman Center (co-ed) housing facilities. **(Ex #8)**

**ix.**    Filing complaints about the Defendants wage theft crimes and/or

compensation discrimination based on miliary obligation, selection service

status, and on the count of race, and color. **(Ex #9)**

**x.**    Filing complaints about the Defendants ECOA Act discrimination under GI

Bill loans refer to the VA Home Loan benefit for **(Ex #10)**

9. The Defendants have discriminated against the Plaintiff for filing

complaints with about the Defendants' "**whites only" rule** in certain sections

of ADVA Cemeteries, under which the Defendant only allows burial in the

cemetery for white Anglo individuals.

5

10. **Since 2009,** the Defendants have discriminated against Plaintiff, Gregory Kelly, because he reported and disclosed information about Military Selective Service discrimination in Alabama requiring "**ONLY MEN**" not women, and not trans individuals to register for the Miliary Draft which constitute sex discrimination. **(Ex #11)**

11. **On April 24, 2005,** the Defendants and "U of A Machine Members" slapped Plaintiff, Gregory Kelly, with a state gag order intended to prevent him from exposing **'pedophile protectors**", and taking about the Defendants acquiescing in these Jeffrey Epstein, P. Diddy and R Kelly-like heinous sex crimes at the state VA and foster care systems.

12. The Defendants and "U of A Machine" ( secret society members) acts and actions violate federal employees' rights under the First Amendment, Civil Rights Act laws; and the PPPs and MSPs under the CSRA Act.

13. Under the XI of the Civil Rights Act, the Defendants' discrimination against women and transgender students seeking to participate in the Defendants' Reserve Officers' Training Corps (ROTC) and Science, Technology, Engineering, and Math (STEM) education programs.

14. The Defendants and "U of A Machine" (secret society members) have denied have G-I Bills and housing Benefits to same sex married couple in survivor benefits for certain survivors of LGBTQ+ Veterans.

15. On April 24, 2005, Plaintiff, Gregory Kelly, was slapped with a state court gag order to prevent him from talking **Defendants segregated cemeteries and "whites only" rule** in certain sections of AL- DVA cemeteries which lack meaningful access, dignity and peace of mind for Black nonwhite family members of deceased military vets .

16. The Defendants and "U of A Machine" (secret society members) maintained a hostile workplace where sexual harassment, drug use, and sexual assault went unchecked — conduct that violated federal law.

17. The Defendants discriminated against and blacklisted the Plaintiff for filing against the Defendants' contractor's violations of the statutory prohibition on **federal contractor gifting and contributions in the Federal Election Campaign Act of 1971, as amended ("FECA").**

18. The Defendants discharge and discriminate against the Plaintiff for filing complaints about the Defendants' contractors violating the FCPA Act statutory laws which makes it illegal for the Defendants' contractors, employees and agents to bribe foreign officials to get or keep business.

19. On federally funded jobs and projects, the Defendants' contractors under federally funded programs (like US -SBA contracting and WIOA job training), required "**ONLY MALE**" U.S. citizens and/or U.S. residents to register with the Selective Service System between ages 18 and 26.

20. The Defendants discharged and blacklisted the Plaintiff for filing complaints about the **Defendants "Do Not Resuscitate" (DNR) orders**, primarily within the state's VA, foster care and prison systems, which constitute violations of civil rights and constitutional law violations.

21. The Defendants discharge and blacklisted Plaintiff, Gregory Kelly, because he the accusing the Defendants of **USING OUTDATED DISASTER EVACUATION PLANS** for ADVA vets with disabilities.

22. The Defendants' contractors were also making false promises and attestations about statuses of DBE, MBE/WBE, SDB, SDVOSB, HUBZone, and/or Section 8(a) for certain Defendants' contractors false claims about compliance with the MSPs and PPPs laws when receiving federal funds.

23. Defendants' hiring practices led to job applicants being paid unfair wages under the FLSA Act where three temporary worker categories are consistently in high demand by U.S. employers: H-1B, H-2A, and H-2B.

   a) **H-1B workers perform services** *in specialty occupations,*[2] *which may include, but are not limited to, architecture, engineering, education, accounting, law, and the arts.*

   b) **H-2A workers** *perform seasonal or temporary agricultural labor, and engage in range herding and livestock production. The H-2A visa is not subject to any numerical limitations.*

   c) **H-2B workers perform non-agricultural**, *temporary jobs in a variety of fields, including landscaping, meat and seafood processing, and construction. The H-2B visa is subject to a statutory annual cap of 66,000, which has been reached every year since FY2014.*

24. The Defendants and more **than 458 state government agencies** have failed to maintain accurate I-9 records for many of its foreign nationals in the United States since 2002- 2014 as required by law.

25. During that period, the Defendants and more **than 458 state government agencies** did not accurately complete a Form I-9 Employee Eligibility Verification Form for many persons that it employed in the United States and did not properly maintain I-9 forms, including a wholesale and widespread failure to update and re-verify the employment authorization status of a substantial percentage of its foreign national employees

26. The Plaintiffs were also discriminated against for filing federal complaints under the new **2025 US DOJ/ USPS-OIG  Whistleblower** complaints for violations under Sections 1, 2, and 3 of the Sherman Act, and Section 4 of the Clayton Act, 15 U.S.C. §. The Plaintiffs claim that Section 4 of the Clayton Act, 15 U.S.C. § 15(a) (1985), provides:

> *Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefore ... and shall recover threefold the damage sustained by him sustained, and the cost of suit, including a reasonable attorney's fee.*

27. The Defendants' and the Defendants' contractors **attempted   to criminalize and defame "** the Plaintiffs for filing complaints under the RPA Act, Clayton Act, the CAARA **and Sections 1, 2, and 3 of the Sherman Act** which affects the USPS revenues and/or property by deterring competition, leading to inflated costs for USPS services or contracts, and harm the USPS finances or assets.

28. The Defendants' and Defendants' contractors and 3th party vendors colluded in PPE (Personal Protective Equipment) and PVC pipe tariffs and price-fixing conspiracies during and after the COVID-19 pandemic.

29. The Defendants also colluded in RICO Act conspiracies over nurse and IT employees' salaries during and after the COVID-19 pandemic.

30. The Plaintiffs have accused the Defendants' and the Defendants' housing provider, Troy University at Newman Center were violating the FHA Act by discrimination based on religious belief and citizenship status .

31. In their communicating with Sen. Richard Shelby and Rep. Martha Roby, the Plaintiffs urged their U.S Congressperson to hold CAVHCS employees and contracts workers accountable for wrongdoings.

32. In their communicating with state lawmakers, the Plaintiffs state lawmakers hold CAVHCS employees and contract workers accountable for driving their CAVHCS clients to the Tuskegee , AL ( crack houses) and Montgomery, AL (curb market )to buy unregulated THC and hemp intoxicating products containing hemp-derived cannabinoids.

33. The Plaintiffs were also "*__blowing  the whistle__*" on toxic talcum powder misuse at CAVHCS hospital and VA clinics.

34. The Defendants knew Talcum Powder contained toxic asbestos, and asbestos exposure can lead to mesothelioma cancer, and lung cancer.

35. The Defendants' contractors negligently failed to test "contaminated concrete, asphalt and road slag" and contaminated PVC piping at these new AL-DVA facilities for toxic substances like oil, chemicals (e.g., AFFF and PFAS, chlorides), and posing environmental/health risks, (e.g., toxic coal ash, PCBs), requiring specific cleaning (blasting, washing) or disposal methods.

36. The Defendants also discriminated against the Plaintiffs for reporting information about Defendants' contractors releasing and venting HFCs, CFCs, and HCFCs into the atmosphere which constitute violations of Section 608 of the CAA Act during servicing, or disposal of GHG refrigerants.

11

37. The Defendants discriminated against the Plaintiffs for report information about Defendants' contractors who are/were dumping radioactive medical waste, cooking oil, pesticides, fertilizer, and Electronic Waste (E-Waste), batteries, fluorescent light bulbs and other Hazardous Waste in sewage systems, and violating CWA Act and SWDA Act laws.

38. The Plaintiffs like Dr. Chris Kirkpatrick, were blowing the whistle on the opioid crisis at CAVHCS clinic.

39. The Plaintiffs like Dr. Chris Kirkpatrick, faced reprisal acts after blowing the whistle about these **weirdo , wacko, sicko, psycho medical patients** being over-prescribed medication at state DVA facilities

40. Dr. Chris Kirkpatrick, a 38-year-old clinical psychologist, shot himself in the head after being fired from the Tomah Veterans Medical Center because Dr. Kirkpatrick complained that some of his DVA patients were too drugged to treat properly, he was ousted from his federal job, and Dr. Kirkpatrick's concerns of wrongdoing were disregarded.

41. In this alleged RICO Act **CRIMINAL ENTERPRISE,** Plaintiff, Gregory Kelly, was slapped with a gag order to prevent him from unmasking the Enterprise players and participants and hold the Defendants' and the **CRIMINAL ENTERPRISE** players and participants accountable for enabling or covering up sexual abuse crimes

12

42. The Defendants' and U of A" Machine Members  and  the Enterprise players constitute a **CRIMINAL ENTERPRISE** , and  Enterprise members have  committed at **least two (2) specific crimes**, called predicated acts, **within a 10-year period**, and their predicated acts include mail , wire , and computer fraud  and interstate transportation for illegal sexual activity,  and **reprisal acts  against a whistleblower.**

43. By the Plaintiff, Gregory  Kelly, previous  emails, USPS mailings court testimony and  other communications , the Defendants' and  "U of A  Machine Members" and **more than  458 state agencies**  knew that the reprisal acts against Plaintiff, Gregory  Kelly  as a government whistleblower (Sec. 1107) constituted as predicated RICO Acts and feleony offenses.

44. Said above-described  conduct  and actions by the Defendants'  and  "U of A Machine  Members" and **more than  458 state agencies**  constituted negligent hiring, training,  retention and negligent supervision where  the Defendants failed to properly vet, train, or supervise their employees.

45. Said above-described  conduct  and actions have  caused  injuries and harm to the Plaintiffs  in the sum of $2, 600,000,000.

## II.    <u>JURISDICTION AND VENUE</u>

46. All the events, transactions, or occurrences which gave rise to Plaintiff's claims took place in this Judicial District. Therefore, venue is proper in this District and this Division pursuant to 28 U.S.C. § 1391(b)(1).

47. This Court has original jurisdiction under 28 U.S.C, 1331 and 28 U.S.C, 1343 over the Plaintiffs causes of action under the laws and Constitutions of the United States and supplemental jurisdiction over the Plaintiffs request for declaratory and injunctive relief under 28 U.S. Code §§ 2201 and 2202.

48. Venue is proper in this judicial district under 28 U.S.C. § 1391(b), because a substantial part of the events or omissions give rise to the claim occurring in this judicial district, all the Defendants regularly conduct business in this District, and the named Plaintiff resides in this District.

## III.    <u>PARTIES</u>

49. **Plaintiff Gregory Kelly**, is a black male, over the age of sixty (60) years, and at all times relevant hereto was a resident of Montgomery, Montgomery County, Alabama, which is encompassed in the area of the United States District Court for The Middle District of Alabama, Northen Division,

50. **Plaintiff Annette B. Kelly** is a black female, over the age of sixty (60) years, and at all times relevant hereto was a resident of Montgomery, Montgomery County, Alabama, which is encompassed in the area of the United States District Court for The Middle District of Alabama, Northen Division.

14

51. **Defendant ALABAMA DEPARTMENT OF VETERN AFFAIRS**

   **(ADVA)** is a state agency. Under the anti-DEI Executive Orders and

   implementing directives , ADVA as a state agency was required to review and

   eliminate its DEIA-related policies, training programs and staffing.

52. **Defendant JEFFREY NEWTON** , Commissioner of the ADVA is sued in his

   official capacity for directing the agency responsible for issuing and enforcing

   directives implementing the anti-DEI EOs, including terminating  employees

   engaged in DEIA work going back to April  9, 2009.

53. **Defendant KENT DAVIS**, ex-Commissioner of the ADVA is sued in his

   official capacity for directing the agency responsible for issuing and enforcing

   directives implementing the anti-DEI EOs, including  terminating  employees

   engaged in DEIA work going back to April  9, 2009.

54. **Defendant ALABAMA  STATE MILITARY DEPARTMENT** is a state

   agency. Under the anti-DEI Executive Orders and implementing directives ,

   the State Military Department  as a state agency was required to review and

   eliminate its DEIA-related policies, training programs and staffing.

55. **DAVID K. PRITCHETT** as the Adjutant General of the Alabama National

   Guard is sued in his official capacity for directing the agency responsible for

   issuing and enforcing directives implementing the anti-DEI EOs, including

   terminating  employees engaged in DEIA work going back to April  9, 2009.

56. **SHERYLE E. GORDON** as the ex-Adjutant General of the Alabama National Guard is sued in her official capacity for directing the agency responsible for issuing and enforcing directives implementing the anti-DEI EOs, including terminating employees engaged in DEIA work going back to April 9, 2009.

57. **Defendant ALABAMA STATE PERSONNEL BOARD (ASPB)** is a state agency. Under the anti-DEI Executive Orders and implementing directives , ASPB as a state agency was required to review and eliminate its DEIA-related policies, training programs and staffing

58. **Defendant ALABAMA STATE PERSONNEL DEPARTMENT (ASPD)** is a state agency. Under the anti-DEI Executive Orders and implementing directives , ASPD as a state agency was required to review and eliminate its DEIA-related polices, training programs and staffing. .

59. **Defendant LAURY B. MORGAN,** as the Alabama State Personnel Director, is sued in her official capacity for directing the agency responsible for issuing and enforcing directives implementing the anti-DEI EOs, including terminating employees engaged in DEIA work going back to April 9, 2009.

60. **Defendant JACKIE GRAHAM,** as the ex-Alabama State Personnel Director, is sued in her official capacity for directing the agency responsible for issuing and enforcing directives implementing the anti-DEI EOs, including terminating employees engaged in DEIA work going back to April 9, 2009.

16

61. **Defendant STATE OF ALABAMA GOV. OFFICE( AL Gov Office)** is a
    state agency. Under the anti-DEI Executive Orders and implementing
    directives , the AL Gov Office's state agency was required to review and
    eliminate its DEIA-related polices, training programs and staffing.

62. **Defendant KAY IVEY** is sued in her official capacity for directing the agency
    responsible for issuing and enforcing directives implementing the anti-DEI
    EOs, including  terminating  employees engaged in DEIA work going back to
    April 9, 2009.

## IV.    COUNTS DISCRIMINATION FRAUD WITH FEDEERAL  FUNDS AND   CIVIL RIGHT VIOLATIONS

## COUNT I

## RETALIATION  AND VIOLATIONS  OF THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION
### (Against   All the Defendants )

63. The First Amendment prohibits retaliation against individuals for their speech,
    including their actual or perceived political beliefs and associations.

64. The anti-DEI EOs and implementing directives targeted Plaintiffs for adverse
    treatment based on Defendants' belief that they are political enemies of the
    Trump Administration  and "U of A Machine members"  , have a "woke
    ideology," are "far left" or "Marxist," and/or are members of or support the

17

Democratic Party, all due solely to their association—or perceived association—with DEIA based on their job title, perceived job duties, or the government jobs they performed prior to their termination.

## COUNT 2

### INTENTIONAL  DISCRIMINATION AND  (ADVOCACY)
### (Against All the  Defendants )

**65.** Defendants have engaged in intentional, government-wide, and systemic policies, patterns, and/or practices of discrimination against Plaintiffs  in adopting and implementing the anti-DEI EOs and related directives for the purpose of punishing workers who advocate for or are perceived to advocate for Americans who belong to protected gender or racial communities.

**66.** As a direct result of Defendants' discriminatory policies and/or practices as described above, Plaintiffs have suffered damages including, but not limited to, lost past and future income, compensation, and benefits.

**67.** Plaintiffs seek damages and also declaratory and injunctive relief, including reinstatement, restoration of seniority, expungement of references to their terminations from their federal employment records, and any other relief this Court deems just and proper.

## COUNT 3

### INTENTIONAL DISCRIMINATION (GENDER)
### Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.
### (Against All the Defendants )

68. The Defendants have engaged in intentional, government-wide, and systemic practices of discrimination against the Plaintiffs in violation of Title VII by intentionally targeting employees who are women and/ or nonbinary.

69. As a direct result of Defendants' discriminatory policies and/or practices as described above, the Plaintiffs have suffered damages including, but not limited to, lost past and future income, compensation, and benefits.

70. The Plaintiffs seek damages and also declaratory and injunctive relief, including reinstatement, restoration of seniority, expungement of references to their terminations from their federal employment records, and any other relief this Court deems just and proper.

## COUNT 4

### INTENTIONAL DISCRIMINATION (RACE/COLOR )
### Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.
### (Against All the Defendants )

71. Defendants have engaged in intentional, government-wide, and systemic policies, patterns, and/or practices of discrimination against Plaintiffs in violation of Title VII by intentionally targeting employees who are people of color.

**72.** As a direct result of Defendants' discriminatory policies and/or practices as
described above, Plaintiffs have suffered damages including, but not limited to,
lost past and future income, compensation, and benefits.

**73.** The Plaintiffs seek damages and relief, including reinstatement, restoration of
seniority, expungement of references to their terminations from their
employment records, and any other relief this Court deems just and proper.

### COUNT 5

### DISPARATE IMPACT  DISCRIMINATION(GENDER)
### Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq
### (Against All the  Defendants )

**74.** The anti-DEI EOs and implementing directives have had an adverse impact on
Plaintiffs on the ***account of sex/gender*** which cannot be justified by business
necessity. Even if such systems and/or policies could be justified by business
necessity, less discriminatory alternatives exist and would equally serve any
alleged necessity.

**75.**  As a direct and proximate result of Defendants' discriminatory actions,
Plaintiffs have suffered lost compensation and other economic damages.

**76.** Plaintiffs seek damages and also declaratory and injunctive relief, including
reinstatement, restoration of seniority, expungement of references to their
terminations from their federal employment records, and any other relief this
Court deems just and proper.

## COUNT 6

### DISPARATE IMPACT  DISCRIMINATION (RACE/COLOR)
### Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq
### (Against All the  Defendants )

77. The anti-DEI EOs and implemented directives have had an adverse impact on

Plaintiffs on the **account of race/ color** of which cannot be justified by

business necessity. Even if such systems and/or policies could be justified by

business necessity, less discriminatory alternatives exist and would equally

serve any alleged necessity.

78.  As a direct and proximate result of Defendants' discriminatory actions,

Plaintiffs have suffered lost compensation and other economic damages.


79.  Plaintiffs seek damages and declaratory and injunctive relief, including

reinstatement, restoration of seniority, expungement of references to their

terminations from their federal employment records, and any other relief this

Court deems just and proper.

## COUNT 7

### DISPARATE IMPACT  DISCRIMINATION (RACE/COLOR)
### Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq
### (Against All the  Defendants )

80. The CSRA prohibits supervisors and managers who are taking personnel

actions from committing any of the prohibited personnel practices specifically

enumerated at 5 U.S.C. § 2302(b), including: discrimination in violation of the Civil Rights Act of 1964 on the basis of race, color, religion, sex, or national origin (5 U.S.C. § 2302(b)(1)(A)); discrimination on the basis of political affiliation or political coercion (id. at (b), (1E) & (3));

81. Defendants' separation of Plaintiffs from their positions of record and from federal service is unlawful because the removals:

    i.   are prohibited personnel practices under 5 U.S.C. § 2302(b)(1)(A), discriminating on the basis of race and/or sex, in violation of Title VII;

    ii.   are prohibited personnel practices under 5 U.S.C. § 2302(b)(1)(e), discriminating on the basis of perceived or presumed partisan political affiliation.

    iii.   are prohibited personnel practices under 5 U.S.C. § 2302(b)(12), infringing upon the fundamental rights guaranteed by the First Amendment to the U.S. Constitution and the Merit System Principles described in 5 U.S.C. §§ 2301(b)(2) and (8)(a).

82. As a direct and proximate result of the Defendants' unlawful actions, the Plaintiffs have suffered lost compensation, emotional distress, and other damage; accordingly, they seek compensatory damages.

83. The Plaintiffs seek damages and declaratory and injunctive relief including reinstatement and any other relief this Court deems just and proper.

## COUNT 8

## 42 U.S.C. § 1981 and TITLE VII HOSTILE WORK ENVIRONMENT
(Against All the Defendants )

84. The Defendants' though its agents and employees, and Enterprise members , players and participants harassed the Plaintiffs because of the Plaintiffs race/color and sex/gender and disabilities .

85. The Defendants' harassed the Plaintiffs for reporting wrongdoing and public corruption, and fraud, waste, abuse as recipients of with federal funds and technical assistance as described above in this federal complaint.

86. The Defendants' and the Defendants' employees became hostile and adversarial to the Plaintiffs in retaliation because the Plaintiffs would not acquiesce criminal acts including sexual abuse and elderly exploration crimes committed by Defendants' and the Defendants' employees.

87. On or about April 9, 2009, the Defendants' and the Defendants' Brokeback Mountain and LGBTQIA homosexual employees caused false complaints to be made against Plaintiff, Gregory Kelly, before the APSC Commission and subsequently the Alabama State Personnel Department (ASPD) and the Alabama State Personnel Board (ASPB) state agencies

88. Plaintiff, Gregory Kelly, suffered damage because of the hostile work environment and discrimination and employment blacklisting .

23

89. As a proximate result of Defendant's unlawful harassment and discrimination ,

Plaintiff, Gregory Kelly,  suffered financial loss, loss of dignity, loss of career

opportunities, embarrassment, humiliation, emotional distress, and physical

pain and suffering.

## COUNT 9

## CONSPIRACY TO VIOLATE  CIVIL RIGHTS  (42 U.S.C. § 1985)
### (Against All the  Defendants )

90. In taking the above-described actions, Defendants intentionally and willfully

conspired against the Plaintiffs to deprive them of their  constitutionally

protected speech under the First Amendment, to include discharging them

from  their  state jobs

91.  Plaintiff's constitutionally protected speech regarded matters of public

concern, and said speech played a substantial part in  the Defendants' decisions

to discharge  the Plaintiffs as state employees

92. As a proximate consequence of Defendants' violation of the First Amendment,

the Plaintiffs have suffered and will continue to suffer damage to his

professional life, reputation, and future career opportunities, future pecuniary

losses, emotional pain, embarrassment, humiliation, inconvenience, mental

anguish, loss of enjoyment of life, and non-pecuniary damages.

93. Each Defendant committed acts to further the conspiracy.

## COUNT 10

### CONSPIRACY UNDER 31 U.S.C 1962(d)
### (Against All the Defendants)

94. The ADOI Defendants  and Enterprise participants  and child grooming gang

members have engaged in the commission of and continue to commit overt and

covert unlaw action which include, but not limited  to:

a) Multiple acts of e-Gambling Sports because  on April 5, 2016,  the AL AGO determined  that DFS E-sports  contests are gambling activities

b) Multiple acts  of ID Theft

c) Multiple acts  of Robbery

d) Multiple acts of Bribery

e) Multiple acts of   Dealing in porn an obscene matter ***delivered and/or cause  to be delivered into interstate commerce***

f) Multiple acts of Dealing in controlled,  banned  and unregulated substances  such as THC and Hemp  intoxicating products ***delivered and/or cause  to be delivered into interstate commerce.***

g) Multiple acts of Dealing in ozone depletion chemicals

h) Multiple acts   Counterfeiting

i) Multiple acts of   Thefts

j) Multiple acts of Embezzlement

k) Multiple acts of Accounting and Actuarial fraud

l) Multiple acts of Honest Service fraud

m) Multiple acts Financial Elder Abuse Frauds

n) Multiple acts of Obstruction of justice by lying under oath

o) Multiple acts  of Forced Labor and Slavery

p) Multiple acts of Money laundering

q) Multiple acts of Attempted   Commission of murder-for-hire

r) Multiple acts of Bankruptcy fraud or securities fraud

s) Multiple acts   Criminal copyright infringement

t) Multiple acts of   Human smuggling

u) Multiple acts of terrorism

v) Multiple acts of Criminal fraud such as spying, snooping, stalking and cyberstalking   crimes

w) Multiple acts of retaliating against a government whistleblowers and/or informants for exposing and reporting Medicare , Medicaid and TRICARE Healthcare Frauds, and MSP Act frauds

x) **Multiple acts of reprisal act against government whistleblowers and/or informant under the 2002 SOX Act and EO 14151** including attempted "murder for hire crimes" by toxic gas and chemical asphyxiation attack.

## COUNT 11

### CIVIL CONSPIRACY UNDER ALABAMA LAW
### (Against All the Defendants )

95. A civil conspiracy under Alabama law requires a combination of two or more individuals to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means.

96. . Defendants conspired to illegally retaliate against the Plaintiffs for engaging in federally protected speech and exercising his federally protected right to speak out on matters of public concern.

97. The Defendants conspired to deprive the Plaintiffs of their civil rights.

98. The Defendants conspired among themselves, and each Defendant committed acts to further the conspiracy

## COUNT 12:
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Against All Defendants)

**99.** The above-named Defendants and "U of A" Machine ( secret society) Gang

Members and more than 458 state agencies  Defendants  and their business

associates conduct, and actions constitute intentional infliction of emotional

distress on the Plaintiffs that was malicious.

100. "The Machine" at the University of Alabama (UA) and Machine Members

are  infamous for election interference, intimidation, vandalism,

and racism **(like home bombing,  cross-burning and gas poisonous  attacks**

**and lying under oath  ),** and Machine Members organized, corrupt activities;

**inciting imminent violence and  hate crimes and reprisal   acts against The**

**Black "Talented Tenth" refers** to W.E.B. Du Bois' concept of a vanguard of

highly educated Black leaders (ministers, educators, doctors, lawyers) meant to

uplift the entire race through intellectual and cultural advancement

### PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs pray that the jury

will award him, based on the facts and circumstances of this case, an amount of

money to adequately compensate the Plaintiff and to sufficiently punish the

Defendants so as to deter such action in the future.

**Respectfully Submitted January 16 of 2026.**

By: _____ 1-16-2026

**Gregory  Kelly, Plaintiff**
6213 Willow Glen Dr.
Montgomery, AL 36117
Email Address: gkelly6213@yahoo.com

By: _____
1/16/2026

**Annette B. Kelly, Plaintiff**
6213 Willow Glen Dr.
Montgomery, AL 36117
Email Address: gkelly6213@yahoo.com